of America. Oral argument not to exceed 15 minutes per side. Mr. Rennie for the defendant appellant. Good morning, your honors. I'd like to reserve five minutes for rebuttal. Your honors, under section 4052F, Congress allowed taxpayers to repair or modify used trucks without incurring the heavy truck excise tax in certain circumstances. The statute has two subsections providing, first, the cost of the repairs and modifications to the truck or article in terms of the statute cannot exceed 75% of the price of a new article. And second, the article, when it was new, had to be taxable. We would submit that both subsections of this statute indicate that the taxpayer must start its repair process with something meeting the definition of an article. Fitzgerald can't satisfy that standard here because it was buying used engines from junkyards and installing them in otherwise new trucks. An engine is a component under the statute, not an article. Fitzgerald also made no attempt to identify. I noticed that in the briefing, but I thought that there was a time period during which the entire truck was purchased and the engine was taken out of it, as opposed to the later methodology of just purchasing the engine that was cut out by the junkyard. Is there not a time distinction there? There is a distinction, your honor. That was in prior tax periods before the 2012 to 2017 tax years that we are looking at here. So the ones that are at issue, all of that was the removal by the junkyard and then the shipping of the engine or the engine and the transmission? Correct. Yes, your honor. And I think you can look at, for example, Nick Bresaw's testimony, one of Fitzgerald's witnesses who explains that at record entry 206, page ID 16049, that in these tax periods they were just purchasing the engine and transmission. Does that make a difference? Would your argument be different if they had continued to purchase the truck? It might be, your honor. We think they would have a much stronger position in that case. The prior audits had minor changes, so the IRS largely accepted their position that they were repairing an identifiable article in those prior periods. So we think that's a much stronger argument. But you're making a distinction between article and component. You're saying the engine's a component because they didn't make a substantial enough purchase to qualify for the exemption. What constitutes an article? The whole thing? Or can it be most of the original truck, but there's some replacements? How do we know what an article is then? Well, article is a defined term under the statute. It has several specific things, usually in some cases a truck chassis, in some cases a cab. It has to have a cab and has to have a chassis? Excuse me? It has to have a cab and has to have a chassis? No, no, your honor. But also a tractor, which a tractor is defined under the regulations as a highway vehicle, which is then also defined in the regulations as a self-propelled vehicle capable of towing a loaded vehicle. Well, I mean, do you understand if I'm struggling? It's just hard to know when it, under the government's test, when is it enough to qualify? You're saying engine alone isn't enough. Correct, because it's clear that an engine alone is a component. What is enough? What is, because there's kind of a bright line, like 75% test in the statute, which would be one easy, clear way for us to resolve this. But you want us to do it a different way. So engines are out, but when is there enough of the vehicle component, or article, truck that we know that it's the article? Well, look, to be clear, I know a big issue in this case is whether Schneider applies and the rationale there. But we would submit that's a different question as to whether you have an article throughout the repair process, which is what the issue was there. In that case, the taxpayer clearly owned trucks from its own fleet that it was then repairing. There's no question that they had a truck. They had title to them. They had previously paid the tax on them. If you have that kind of proof, there's no dispute that you have an article. Here you don't have anything like that. They were getting new engines, right? Excuse me? They were getting new engines or new transmissions in Schneider? In Schneider, they were taking various components and installing them into the glider kits, in that case, but they had multiple components. What about the argument of one operation, that this is, the entirety of this is one operation, that Fitzgerald and suppliers extract old engines from trucks as one operation because the code doesn't require that they be analyzed differently? What is your take on that? I'm not quite clear on it either. I think it's probably distinguishing the actual article issue from the operation that was undertaken to create the new truck. Fair enough. I think what they're trying to say is that, essentially, they're trying to take credit for work that these salvage yards did in dismantling. Well, did they pay the salvage yards to do that work? Such that it was something that was on their nickel, so to speak? I think that evidence doesn't really show that. What the evidence really shows is that the salvage yards would dismantle the trucks, they would take out the usable components, sell them, and Fitzgerald was basically calling them up and saying, hey, do you have some engines that we can buy? Do you have enough to load up on a trailer here and send to us? Is the record clear that that was the methodology as opposed to them saying, I want to buy that truck engine, cut it out for me, and I'll pay you to cut it out, and you send it to me? I think that it is clear, Your Honor, even from their witnesses and from the district court's own opinion, which itself mentions the facts, that they were repairing engines, not tractors. That's on page ID 17133, record entry 217. On page ID 17139, he basically says that the government's proposed experts, his opinion was harmless because it was excluded. Because Fitzgerald's witnesses admitted his conclusions was that it was buying engines and placing them into glider kits and didn't have titles for those, quote, less than startling conclusions. And if you look at the testimony of Tommy Fitzgerald, Nick Bresaw, and Joseph DePue, it's apparent that they were having third parties, as they refer to it, who were extracting the engines. It wasn't Fitzgerald doing it. It wasn't Fitzgerald calling up and saying, we want to buy this truck, and we want to have you, as our agent, remove the engine. They were just calling them up or sending them sheets and saying, we want some engines that fit these capacities. If you have enough, we'll send a truck to pick them up. It's just a struggle to understand how individuals, consumers or people or businesses, know how to respond when this significant allowance of work that's untaxed is a question of how it functions. It matters, if you bought the truck, then you qualify for the protection of the safe harbor. If you didn't buy the truck, but you bought everything in it that was all you were going to use anyway, then you don't qualify. I'm struggling to understand if there's some sort of bright line that the people who are seeking the safe harbor would know how to seek it. Well, their own accountant actually advised them exactly along those guidelines, so they would have been completely aware of it, and that's what they were doing in these prior periods. What's the tax division's guidance? I asked you a similar question. 50-50, half the stuff you own, half the stuff you bring in. Is that an article? Does that qualify under section F1? I think it would depend on what meets that regulatory definition. The IRS has issued some guidance even before the codification. For example, that 1993 Technical Advice Memorandum where the taxpayers were taking engine transmission and tandem axles and thought that those satisfied the definition. This was all pre-statutory change? That was before the codification, but... Well, I mean, I don't know what to draw from that. I could have interpreted prior background principles, could not have interpreted prior background principles, especially guidance documents from the agency. Those don't seem particularly valuable to me. So just, you know, all that aside, I just don't, I'm not getting a real concrete answer about how a taxpayer is supposed to know when they have an article and when they don't. There's a sort of bright line test in the statute, the 75% figure, which I'm not saying is right, but it's easy to apply, so it's attractive in that way. And your answer is there's a bunch of things and you don't know until, I guess, the IRS tells you? Well, if you own it, that's pretty clear. A hundred percent, sorry. If you own a hundred percent. It's the title. Well, I know, so I give you the 50-50 hypothetical. You own half the stuff, you have a truck that's like half dilapidated, you buy, you know, obviously it includes wrecked vehicles, so they're probably bringing in a lot of new parts. If something's wrecked, they're probably bringing in a lot of new stuff to reconstruct it. Well, it's tough to say because... I know it's tough to say, but we have to say. Unfortunately, we have to say. That's the problem. Well, Your Honor, I think if you have title or you have constructive or beneficial ownership, then yes, you have an article. If you don't, then you just have pieces. You have components, maybe, or parts. There's evidence or discussion, shall we say, about previous audits being approved, the methodology that's now in question. Can you straighten that out for us? Has the IRS said that what they were doing was appropriate and no longer says that? No, the IRS never said that what they're doing during these tax periods was appropriate. They said what they were doing in prior tax periods, they had essentially limited changes during the audit, not this type of change that's proposed here. So those were periods where... The prior periods, did the prior periods where their audit was approved include the mechanism that we're talking about here of someone purchasing the engine and the transmission only? No. No. So you say there is a complete factual division between the time that the audit's approved and the time that's in question in this case? I believe that's what the evidence shows, Your Honor, yes. Okay. I think you'll... Good morning, Your Honors. I'm Kendall Jones, and I represent Fitzgerald Truck Parts and May it please the Court, as you've just heard, the government makes two arguments with respect to the 75% test under 4052F1. They basically say Fitzgerald was just buying engines and repairing engines, and therefore you can't meet the safe harbor as a matter of law. Secondly, they say Fitzgerald was not repairing the article, with emphasis on the word the, and they say that the article somehow, if you remove parts, has disappeared. But both of these arguments fail under the plain, ordinary meaning of the statute. The safe harbor is a straightforward math test. It doesn't look at how you did the repairs, how many parts you used. It doesn't mention that at all. It simply says repairs, and repairs can happen to wreck tractors. Those are both very broad terms under their ordinary meanings. And as the Seventh Circuit held in Schneider, the statute contemplates only a math test. It doesn't matter how the repairs are done. And obviously the Court in this case applied Schneider. The government... I'm sorry, Your Honor. It's a little odd, though, that, you know, you can take, you know, an engine that's a few thousand dollars and then purchase the glider kit, which is a much larger expense, and put this together and call it an article when, you know, you don't have title. The government kind of gave us a title test. You didn't have title, I guess, except title exists somewhere. It's not in your hands. And you purchased a real small piece of it, a piece of the actual final vehicle or article. And there's at least some, you know, there's at least a surface level that you might not think this is what Congress is really attempting to cover here in terms of the safe harbor. It might not, but nonetheless, we have the specific words in the statute. The statute doesn't require title. And the uncontroverted evidence at trial was when Fitzgerald would buy, would identify a Warner wreck tractor in a salvage yard, I think somewhere in Ohio, they asked for the engines and transmissions to be cut out because that's, the engine alone ends up being 40 to 50 percent of the value of the repaired tractor. And they, the salvage yards by law could not transfer title once they did that. Just as if Fitzgerald had the vehicle towed to their facility and they themselves took out the engine and transmission, they can't transfer title to what's remaining. They have to turn that into the state. So title doesn't factor into the equation at all. The other thing I would mention is that the IRS ruled, and I know it's before the statute was issued, but back in 1991, the IRS ruled you can use a glider kit to repair a worn tractor. That's clear. The IRS ruled that in 1991. And it's also... Wasn't there another example in the regulatory history where they kind of talked about this specific example where you take a small part, you add a lot to it, and they say that doesn't count? I'd sort of discount all that stuff, but I thought there were some helpful things for the government on that side too. As do we, because it's on the face of those documents are not precedential. They all say they're not precedential, and as we tried to point out in our reply brief, we can pick and choose some of those old tech advice or chief counsel memoranda or other internal documents that support our position, but they're not official advice. So all Fitzgerald knew is we're following a ruling that says you can use a glider kit. The government back in 1963 defined a glider kit as all new parts except for the engine, the transmission, and occasionally the axles. So the IRS knew what the definition was. Then in 1991, they issued a revenue ruling that says you may use a glider kit to repair a tractor. And then in 1997, Congress passes a statute and says, well, we want you to include wrecked statutes in the safe harbor. So your friend on the other side says that the statute uses the word article, and you're basically saying an engine is an article, and he's saying it's sort of a component. No, there was an article, a highway tractor sitting someplace in a junkyard. And then Fitzgerald knew, well, the only repairable parts generally will be the engine and transmission. So that's what we're going to use. The article is basically the? The article is the worn or wrecked tractor. Yeah, well, this talks about an article, but the only parts of that wrecked tractor you're pulling out are the engine and transmission. Yes, they're economically the most significant parts, though, in terms of the value. The engine alone is 40 to 50 percent of the value of a highway tractor. So it was a substantial portion. But be that as it may. Let me ask you quickly. Yes. So your position is some individual in the public could not take your argument and choose something that was relatively inconsequential in expense and place it into another item in order to avoid paying tax on the finished product. I mean, what is there under your argument? What is there to give a line so that there's an understanding of what you cannot do or the public should understand what you cannot do and claim that you are in a safe harbor? Well, I think based on the 1991 IRS ruling, which is the only public guidance, we know what the test is. I can buy a complete glider kit which has all new parts without the engine, without the transmission. I can repair the engine and transmission, which is going to be 50 percent or more of the value of the vehicle, and install it using a glider kit. Fitzgerald for decades followed that IRS position. We were audited, if you look at it quarter by quarter, which is how the IRS audits excise taxes. It was 40-some audits of 40 quarters. And I want to correct something the government said. The government said, oh, we were always having the trucks delivered to Fitzgerald. That's not true. There are years that the IRS conceded where we were still getting tractors from salvage yards. As the testimony, I think, established at trial, there was testimony by Mr. Fitzgerald that it was just more economical to do it that way. Otherwise, you were having to say to the salvage yard, well, put it on a truck and haul it to Tennessee from Ohio. And that wasn't economical, so they came up with this new strategy. So there's been a long-term reliance on, I think, a pretty solid, bright line. The IRS says you can use a glider kit. And to hear now in litigation they're apparently saying you can't, then what is the standard? Let me stop you for a second and show my absolute ignorance about trucks. So are you saying that the article is the glider kit and it is modified by putting in the engine from a wrecked truck? The statute requires you have to have an original article, a highway tractor. So the original article would be the engine. No, the original article is wrecked and sitting in a salvage yard. And we said instead of us doing it, we'll pay you whatever they charge for the engines and the transmissions, take them out and ship them to us. So, I mean, I think there was a question earlier about how is the government, how is the salvage yard compensated? I assume they did that in their pricing. But there's nothing in the statute that says I have to have possession of the wrecked tractor and I have to be the one to extract the engines and the transmissions. So I think getting back to Judge Strasser's question, there is a standard. This is a very particular safe harbor is what you're telling me. This is a particular safe harbor for the situation and the things that you are actually doing. The glider kit, the trucks from which you take the engine. Yes, and it's a very broad safe harbor. And as the Snyder court held, I mean, if you look at Snyder, parts were coming from everywhere. We don't know where some of the parts came from at Snyder. And the court said, nonetheless, it's a broad test. It doesn't tell you how to do the repairs. And by including the word wrecked, in addition to the word repair, wrecked could mean there's hardly anything left. I believe we included that exhibit showing a picture of a wrecked tractor where the only thing usable was the engine and transmission. And so because that's a substantial part, and maybe the IRS recognized that fact in 91 when they issued the ruling. They knew that glider kits didn't have engines and transmissions, but they must have known that the engine and transmissions would be at least 50% of the value. I don't know. That brings us to the taxable question. Okay. I will jump ahead to that. Explain the taxable question. Okay. That's obviously a key component. Yes. I would just add on there, we think the issue of whether you repair it or modify the tractor is a factual issue. And the judge's instructions pretty clearly track the language in the statute. And the judge told the jury you had to repair the article. And he told the jury that the government's theory is that we were not repairing articles. But, yes, the second component is we have to show that the tractor was taxable when new. It also requires that it has to be taxable when we repair it and sell it. But they were. That's why we're here. So the only issue is the original highway tractor wasn't taxable when new. Those words are clear. It's clear on the face of the statute. The government's position has waffled here. You have to show that tax was paid, it's payable, or that you have to show that the first sale wasn't tax-exempt. And that's just not what the statute says. The evidence showed we only repaired, Fitzgerald only repaired Warner Wreck tractors that were called Class 8 highway tractors. And that's very important because Fitzgerald was selling them as Class 8 tractors. A Class 8 tractor is a tractor where the gross weight of the cab and the trailer or the tanker or whatever they're hauling is more than 33,000 pounds. Fitzgerald was selling those types of tractors. So they had to identify tractors that originally were Class 8 tractors. And when they did that, you knew those tractors would have been taxable when new. So the question is, well, what is the word taxable or taxable when new? What does that mean? And we- Doesn't taxability have to do sometimes with the purchaser? That is what we think. If you're sending them to Canada, if you're sending them to non-profit or governmental entities- Yes, then they're exempt under a different code section.  No, that's under a different code section. But let me start. Let me start- Just ask one other real quick question on the language.  Does the statute say taxable when new or if new? And is there a difference? Does the statute say taxable when new or is there a difference? The taxable when the article when new- If new. Was not taxable. The article when new. Wait, wait, wait. It says both. It depends where you're reading it. Sorry. It depends where you're reading the statute. It uses both words. Another example of a really well-drafted statute. Go ahead.  The word taxable, and the government disagrees with this, but the word taxable is an adjective that modifies article, which I'll call a tractor for purposes of this case. The word taxable is an adjective. When you have a sentence that says, for example, the sky is blue, blue is an adjective that modifies sky. The word article two times in that sentence is modified by the word taxable. Okay? It's the article that has to be taxable when it's new. It doesn't say taxable sales. We think about taxes don't happen until there's an actual event that creates a tax consequence. So if there's not a sale, there's no tax. I mean, things aren't taxable until there actually is an event that requires the tax be a sale. Actually, under the statute, it's taxable at the first use, the first sale, or the first lease. So if Daimler made a highway tractor and decided to- It wouldn't be a tax until there was a use or lease or sale.  In my mind, it's a little funny to think of something as- when we think about it as taxable, it's because there was a tax consequence. There was a lease sale. What if it is the type of sale that everyone concedes is not taxed? I understand you're saying I don't have to prove that a tax was paid on that broken down piece of truck that we purchased. But the question is whether the people to whom you marketed these, if the trucks that you had used were items that were not taxable because they were created for a governmental or a tax-free entity, is that taxable if you know it's never going to be charged? Okay, well, first of all, there's no evidence that anyone knew anything about tractors, you know, the provenance of a tractor that's 20 years old. But be that as it- I thought that there were some that were shipped to Canada. No, no, there was- Governmentally. The government tried to show that there was one or two engines that were purchased from trucks out of Mexico, and the witnesses said, that's just not correct, we would never do that. But getting back to the question you just asked, the word taxable is not the same as whether it was actually taxed, whether a tax-exempt buyer filled out a certificate and asked for an exemption. That's not in the statute. The word on the statute is clear on its face. And I would add, on this issue, the government says in their reply brief they either want, as a matter of law, to win or they want to have a new trial. And in terms of a new trial, they didn't ask for instructions that the engine was not a truck. They didn't ask for that instruction. They didn't ask for an instruction that you had to show it was payable, paid, or that there was a tax-exempt first buyer. They didn't ask for those instructions. And so any objection there has been waived. Thank you. Do you have a little bit more? No, I was looking- Speak quickly. You looked like you had a follow-up question, so I paused. So when you look at case, I go back to, you know, the Supreme Court keeps reminding us, you look at the ordinary meaning of words. The Loper case says you look at the ordinary meaning at the time of enactment, and that's the- I would just say about that argument that it's very difficult to do when you have such a clear, bright-line test that defines all the terms itself. Yes. It's hard to turn to a dictionary in this context. Yes. Okay. But at the same time, we have no new guidance from the IRS. The IRS has never come out and said, can't use an engine. I don't know whether that would withstand scrutiny. Can't use an engine in a transmission. You can't use an engine transmission in a mirror. They've never done that. So in the absence of that, we have the words of the statute and the IRS ruling from 1991, and that's what we've relied on. Next question. Thank you. Your Honors, on the subsection two question, this Court could resolve this case on that and not even get into this subsection one question of whether an engine is an article or not. So how do you do it on the taxability question? Because your colleague says that that doesn't work, that it just has to be in that category of taxable as opposed to, like everything else in the category, but sold to someone that doesn't have to pay tax. What is the test? Sorry, Your Honor. The premise of his argument is that taxable modifies article in that sentence, but it doesn't. It refers to articles that are taxable under Section 4051 or under such section. And such section is 4051, the very first sentence. I think even the first clause, it says, the tax is imposed upon the first retail sale. Other sections then define, say that, you know, use or a long-term lease can qualify as a retail sale. Yeah, but it's the first retail sale of the following articles. Yes. And then it lists them. Yes. And that includes the truck chassis. Yes. But here we're concerned about the tractor. And the last one is tractors of the kind chiefly used for a highway transportation in combination with a trailer or a semi-trailer. Isn't that what was at issue here? Yes, Your Honor. Yes. So those things are only taxable upon the first retail sale. That's the only time you can impose the tax. They're not inherently taxed by reason of their existence. That actually would probably be impermissible constitutionally because you can't just tax ownership. To impose an excise tax under the Constitution, you generally have to tax a transaction or use or some privilege. So what has to be shown to the IRS to qualify for this taxable issue? Most of the time it's not going to be in dispute. If you've got, like, a Schneider that is repairing its own trucks, it bought them originally, it paid the tax, it's a private party, there's no dispute. There's really no question at all that these were taxable when new. In a case like this, it's a lot more difficult because we don't know where these engines came from. Perhaps they could have put on some of their suppliers, some of these salvage yards and said, where do you obtain the trucks that you sold to us from, generally speaking. That probably would have been enough. As we've said in our brief, we don't think you have to produce a receipt for each one of these trucks. But you have to make some kind of evidentiary showing that they would have been subject to the tax, that they would have been capable of being taxed under the law, as this Court has said taxable means in the Sentra case, in order to qualify under Subsection 2. And there just was no showing of that type here. But just to understand the posture, the jury found against you, but you're saying as a question of law, there wasn't enough sufficient evidence for the jury to find that these were all taxable. These were all taxable in the first instance. Correct, yes. They didn't put on a case where they tried to show that these trucks were originally privately purchased or anything along those lines or not from municipalities. They just tried to show that these were Detroit diesel engines from a certain class. Maybe it's not your bird, but you didn't do anything contrary to say there are lots of sales of this vintage to Mexico or Canada or to non-profits. Well, we did put on some evidence where we asked some of their suppliers. We said, where do you obtain your trucks? And some of them said, hey, we get a lot of trucks from governments. We get a lot of municipalities that sell us trucks. And there were a few receipts that we did question their witnesses about that suggested these trucks had been originally exported. If we agreed with you on this point, is it judgment in your favor on this issue? Is it a new trial on the origin of the trucks to give Fitzgerald another chance to show where these trucks came from? We would submit there was a failure of proof and therefore it should be judgment in our favor. Maybe the court could see it differently on that point. Weren't there instructions to the jury about making that determination on taxability? Didn't the instructions effectively say, you have all the evidence that was put in the record before you. It's your job to determine whether everything in that category satisfies the taxable consideration where nothing does or where there's some mix. And so don't we have a jury determination that everything in that category was taxable? Well, we submitted our own instructions. Did you object to the instruction that said to the jury, this is your call? We did not object at trial, but we submitted our own instructions. And the judge said, the parties shall meet and confer in an effort to arrive at an agreed set of substantive jury instructions on the safe harbor issue and a proposed verdict and file the same. The court expects the parties to be able to reach complete agreement on this topic, recognizing that the IRS is preserving the issue for appeal. And that was at record entry 161, page ID 13833. Okay. And so then where did you do the follow-up objection? We appreciate that, Your Honor, but we cannot agree with this. We raised it at trial where we said that we've cited the Sentra case. We said we were entitled to judgment as a matter of law. We brought it up again in our post-judgment briefing, Your Honor. We would submit there's not much else we could do to preserve this point. Except to say we can't reach agreement on these instructions, Judge, no matter what you'd like us to do, and we object specifically to this one. Why couldn't you have done that? The judge had already ruled against us several times, Your Honor. I'm sorry. That just strikes me as funny. But, okay, thank you. Thank you, Your Honor. Thank you both. This is car day here in this court, and we have had very interesting and very difficult to understand issues. Now we have a tax issue on cars as well as a class action issue on cars. So know also we appreciate your work in helping us understand this because it's hard to understand. And we have read your briefs, and we have heard your arguments, and we will issue an opinion in due course.